NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

22-617

STATE OF LOUISIANA

VERSUS

EARL JAMES DARBY

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 164003
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

**********

SHARON DARVILLE WILSON
JUDGE

**********

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Sharon Darville Wilson, Judges.

AFFIRMED.

**Hon. Donald D. Landry, District Attorney**
**Kenneth P. Hebert, Assistant District Attorney**
**15th Judicial District Court**
**800 S. Buchanan Street**
**Lafayette, LA 70502**
**(337) 232-5170**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**Peggy J. Sullivan**
**Louisiana Appellate Project**
**P. O. Box 1481**
**Monroe, LA 71201**
**(318) 855-6038**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Earl James Darby**

**WILSON, Judge.**

Defendant, Earl James Darby, pled guilty to manslaughter, in violation of La.R.S. 14:31, and was sentenced to twenty-five years at hard labor and ordered to pay $150 for the cost of the presentence investigation. He now appeals his sentence, asserting that it is constitutionally excessive. For the following reasons, we affirm Mr. Darby's sentence.

## I.

### ISSUES

In this appeal we must decide:

(1) whether the sentence imposed is constitutionally harsh and excessive given the facts of the offense and Mr. Darby's personal history; and

(2) whether considering the excessive nature of the sentence is this case, the trial court erred in denying the motion to reconsider sentence.

## II.

### FACTS AND PROCEDURAL HISTORY

On October 2, 2017, while Mr. Darby was working the night shift at Subway, he attempted to get in touch with his live-in girlfriend, Lauren Rentrop, to see if his sick son needed medicine. After getting no response from Ms. Rentrop, Mr. Darby left work to check on his son. Upon arriving at his residence, Mr. Darby walked in and observed Ms. Rentrop on the ground, naked, and a naked man ran towards the back of the house. Mr. Darby shot and killed Jacobie Boudreaux as Mr. Boudreaux attempted to jump over the couch. After the shooting, Mr. Darby made Ms. Rentrop help him clean up and he took the body to the dumpster at Subway before going back to work.

On November 8, 2017, Mr. Darby was charged by bill of information with second degree murder, in violation of La.R.S. 14:30.1, obstruction of justice, in violation of La.R.S. 14: 130.1, and intimidating a witness, in violation of La.R.S. 14:1291(a). On April 7, 2022, Mr. Darby pled guilty to manslaughter, in violation of La.R.S. 14:31. The trial court ordered a presentence investigation. On July 15, 2022, Mr. Darby was sentenced to twenty-five years at hard labor and ordered to pay $150 for the cost of the presentence investigation. The court informed Mr. Darby that his sentence was not enhanced nor was he billed as a habitual offender. On July 28, 2022, Mr. Darby filed a motion to reconsider sentence with the trial court. He asserted his sentence is constitutionally excessive because the trial court did not adequately weigh and consider the mitigating factors in the case. The trial court subsequently denied the motion without a hearing, and Mr. Darby filed a motion for appeal on July 28, 2022, seeking a review of the imposed sentence.

III.

## LAW AND DISCUSSION

### ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

### EXCESSIVE SENTENCE

On appeal, Mr. Darby asserts two assignments of error regarding the excessiveness of his sentence. We will address both assignments together. Mr. Darby contends that his sentence is excessive because the trial court did not adequately weigh and consider the mitigating factors in this case. Specifically, he

2

points to the fact that he was a first-felony offender with significant community support, an excellent work history, and children for whom he was providing.

The trial court has wide discretion in the imposition of sentences within the statutory limits, and a sentence should not be set aside as excessive absent a manifest abuse of discretion. *State v. Williams*, 03-3514, p. 14 (La. 12/13/04), 893 So.2d 7, 16. Louisiana Code of Criminal Procedure Article 894.1 lays out the sentencing guidelines. The purpose of the guidelines is to provide for the trial court's articulation of a factual basis for a sentence, not a rigid or mechanical compliance with its provisions. *State v. Bell*, 53,712 (La.App. 2 Cir. 1/13/21), 310 So.3d 307. "While the trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983). However, "[t]here is no requirement that specific matters be given any particular weight at sentencing." *State v. Brown*, 51,352, p. 22 (La.App. 2 Cir. 5/2/17), 223 So.3d 88, 103, *writ denied*, 17-1154 (La. 5/11/18), 241 So.3d 1013.

The trial court allowed Mr. Darby to submit several letters in mitigation, and the trial court heard testimony from Mr. Darby's family and former employers, who testified to his character, upbringing, and work ethic. The victim's family was then allowed to present impact statements, and those family members requested the maximum sentence of forty years. In imposing the twenty-five year sentence, the trial court specifically referenced the factors of article 894.1. The court noted that Mr. Darby was gainfully employed, had a good work record, and was supporting his family prior to the offense. The trial court also acknowledged that Mr. Darby had a sad upbringing, acted on some provocation, and was remorseful.

3

However, the trial court also noted Mr. Darby stood convicted of killing another, that this was a crime of violence using a firearm, the manner in which the firearm was used put others at risk, he initially attempted to cover up the crime, and his actions had a significant impact on the victim's family and Mr. Darby's own family. It is clear that the trial court adequately considered both aggravating and mitigating circumstances. This consideration is reflected in Mr. Darby's sentence of twenty-five years out of a possible forty.

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784

(La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La.6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*State v. Soileau*, 13-770, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-0452 (La. 9/26/14), 149 So.3d 261.

Furthermore, this court adopted the fifth circuit's three-factor test from *Lisotta* in *State v. Baker*, 06-1218 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, *writ denied*, 07-320 (La. 11/9/07), 967 So.2d 496, and *writ denied*, 07-1116 (La. 12/7/07), 969 So.2d 626.

Viewing the reasons for sentencing in light of the three factors, we cannot say Mr. Darby's sentence was excessive. Looking first to the nature of the crime, we note that Mr. Darby pled guilty to manslaughter. Under La.R.S. 14:31, the penalty for manslaughter is imprisonment at hard labor for not more than forty

5

years. This was a crime of violence involving the use of a deadly weapon, which resulted in the killing of Jacobie Boudreaux.

As to the nature and background of the offender, the trial court noted that it had reviewed the presentence investigation report, and Mr. Darby confirmed that he did not have any prior felony convictions. Brandi Dennis testified that Mr. Darby worked for her family for several years, and she has been knowing him for about fifteen years. Ms. Dennis stated that Mr. Darby had also worked for her husband in a lawn service business and would fill in as needed in the construction company. She confirmed that Mr. Darby was a reliable employee, she did not know him to be a violent person, and she would hire him again if he received a shorter sentence. Ms. Dennis further stated that she submitted a letter to the court attesting to Mr. Darby's work ethic.

Mr. Darby's older sister, Shantelle Onezime, stated that she and Mr. Darby grew up in foster homes and that they were separated from the rest of their siblings. She confirmed that there were problems with Mr. Darby in the foster care system, and in one instance, he was attacked and left behind. Ms. Onezime also confirmed that Ms. Darby is a helpful family-oriented man. Another sister of Mr. Darby, Mendrell Darby, testified that her brother is a loving person who helps out everywhere he goes. Mr. Darby took to the stand and apologized to the family of the victim for the pain and suffering he caused, and he asked for forgiveness. He stated he received counseling, and he asked for a second chance. The trial court considered these facts as mitigating factors.

The final factor in the *Baker* analysis is a comparison of the sentences imposed for similar crimes. In *State v. Parker*, 54,190 (La.App. 2 Cir. 3/9/22), 335 So.3d 519, the second circuit affirmed the defendant's thirty-six-year sentence for

6

manslaughter. In *Parker*, the second circuit noted that the defendant chose to become extremely intoxicated and chose to shoot his longtime friend in the head for no apparent reason. The defendant then failed to call 911 or render any aid to his dying friend; instead, the defendant attempted to make it look like the victim committed suicide. The defendant lied about how the shooting occurred and intentionally tried to avoid responsibility for his actions. The second circuit further noted that the defendant was originally charged with second degree murder but received a substantial benefit from his favorable plea agreement. The second circuit indicated the trial court considered relevant aggravating and mitigating factors before imposing sentence.

In *State v. Osborn*, 13-697 (La.App. 3 Cir. 12/11/13), 127 So.3d 1087, the defendant was initially charged with second degree murder, but he pled guilty to manslaughter and was sentenced to thirty years. The trial court found that although the defendant was not a participant in a fight between several individuals, the defendant nonetheless intentionally went to a nearby vehicle to retrieve a gun and fired it, resulting in the death of the victim. In affirming the sentence, this court noted that: the trial court heard victim impact statements, the trial court discussed the nature of the offense, the defendant's background, and several factors including provocation and the likelihood that the defendant's actions would recur.

In *State v. Rouser*, 14-613 (La.App. 4 Cir. 1/7/15), 158 So.3d 860, the defendant was originally charged with second degree murder and two counts of attempted second degree murder, but the defendant was found guilty of the responsive verdicts of manslaughter and two counts of attempted manslaughter. The defendant was later sentenced to thirty years at hard labor for manslaughter and fifteen years at hard labor on counts two and three. The sentences were ordered to

7

be served concurrently. The fourth circuit noted there was a fatal shooting at a tire shop as a result of an ongoing disagreement between the defendant's brother and another individual. There was a verbal disagreement and multiple physical altercations before the defendant removed a gun from his vehicle and began shooting. One person sustained fatal gunshot wounds while two other individuals sustained non-fatal injuries. In affirming the sentence, the fourth circuit noted the following: that the defendant was thirty-seven years old with no previous convictions; that the trial court adequately considered the sentencing guidelines and articulated a factual basis; three letters on behalf of the defendant and well as a letter from the decedent's wife were submitted into the record; and that the trial court noted the victim had been shot six times.

Mr. Darby's sentence is in line with and comparable to sentences in other cases. Additionally, Mr. Darby was originally charged with second degree murder, obstruction of justice, and intimidating a witness, but through his plea deal, he received a significant reduction in criminal penalties. In light of the above factors and the trial court's wide discretion in imposing a sentence within the statutory limits, we find that Mr. Darby's twenty-five year sentence is not so grossly disproportionate to the severity of the crime as to shock our sense of justice, nor is it a needless imposition of pain and suffering. The trial court did not manifestly abuse its discretion when sentencing Mr. Darby and did not err in denying his motion to reconsider sentence on the grounds of excessiveness.

## V.

## **CONCLUSION**

For the foregoing reasons, we find the twenty-five year sentence for manslaughter is not excessive. Accordingly, this court affirms the conviction and sentence of Defendant, Earl James Darby.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3 Uniform Rules, Court of Appeal.